IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-CR-30179-SMY |
| | ) |
| ERIBERTO RICARDO GOMEZ, and | ) |
| YASMANIS L. ODUARDO FONSECO, | ) |
| | ) |
| Defendants. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion to Suppress (Doc. 25). The Court held a hearing on the motion on September 22, 2016. For the following reasons and those stated on the record, the motion is **DENIED**.

### Background

On October 8, 2015, Defendants Eriberto Ricardo Gomez ("Gomez") and Yasmanis L. Oduardo Fonseco ("Fonseco") were pulled over while traveling east on Interstate 70 by Caseyville Illinois Police Officer, Kale Pirtle. Officer Pirtle approached the passenger side of the vehicle and asked Defendants for their driver's licenses. Gomez and Fonseco are native Spanish speakers and did not appear to understand the request. Officer Pirtle said the word "I.D." and made a hand gesture, holding his hand with his fingers in the shape of a small rectangle. Both defendants then produced their driver's licenses. Officer Pirtle then made attempts to communicate Defendants using single Spanish words such as "donde" to ask where Defendants were traveling to. To this, Fonseco responded "New York." Officer Pirtle ran Defendants' driver's licenses which did not return anything unusual.

Officer Pirtle returned to the Defendants' car and asked Fonseco, in English, to exit the

vehicle.  Fonseco did not respond.  Pirtle said, "no ticket" and returned the license to Fonseco.  Officer Pirtle asked, again in English, if there was anything illegal in the vehicle: "Marijuana? Cocaine? Meth? Narcos? Narcoticos?"  Fonseco responded, "No."  The officer then pointed two of his fingers at his eyes then at the vehicle and asked, "Revisar?"[1]  Fonseco responded, "Yes" and gestured with his hand towards the vehicle.  Officer Pirtle asked Gomez if he owned the vehicle by pointing at Gomez then at the car and asking, "Yours?"  Gomez nodded his head.  The officer repeated, "Revisar?" to Gomez while making the same gesture he made to Fonseco.  Gomez nodded his head again.

     A search of the car revealed several dozen gift cards and a credit card reader.  Officer Pirtle approached Defendants with the gift cards and asked, in English, what they were.  Fonseco responded, "Baby shower."  Officer Pirtle used the same word, "revisar" while simultaneously pointing at Fonseco's pockets to ask the Defendants if he could search their persons.  Fonseco responded, "yes" and Gomez nodded his head.  This search revealed several more gift cards and a credit card re-coder.  Defendants were arrested and transported to the Pontoon Beach Police Department.

     Suspecting violations of federal crimes, the Caseyville Police Department recruited the help of FBI Agent Mike Lovell.  Agent Lovell arrived at the Pontoon Beach Police Department with a translator, Intelligence Specialist Mario Jimenez of the United States Attorney's Office for the Southern District of Illinois.  Jimenez is a native of Puerto Rico and a fluent Spanish speaker.  Defendants were informed of their constitutional rights and interrogated separately.  The interrogations were video and audio recorded.  During the interrogation, Jimenez asked Gomez if he recalled Officer Pirtle asking for permission to search the vehicle.  Gomez said he did.  Gomez also said he gave permission for Officer Pirtle to search the vehicle.  Jimenez also asked

---

[1] "Revisar" is a Spanish word for "to examine."

Fonseco if the officer asked for permission to search the car. Fonseco said he did and that permission was granted.

Defendants now seek to suppress the evidence and statements obtained. They argue that, due to the language barrier, Defendants' consent to the search of the vehicle and their persons was unknowing and involuntary, in violation of the Fourth Amendment. The Government argues that the consent appeared voluntary to Officer Pirtle and would have appeared voluntary to a reasonable officer.

## Analysis

Warrantless searches are permissible under the Fourth Amendment if officers receive voluntary consent to conduct the search. *United States v. Figueroa-Espana*, 511 F.3d 696, 704 (7th Cir. 2007). "The government bears the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given. Whether consent is voluntary is a question of fact, dependent upon the totality of the circumstances." *Id*. In *Figueroa-Espana*, the Seventh Circuit provided a non-exclusive list of factors that courts should consider when determining if consent was voluntary: (1) age, intelligence, and education; (2) whether the person was advised of their constitutional rights; (3) how long they were detained before giving consent; (4) whether the consent was given immediately or after repeated requests; (5) physical coercion; (6) whether they were in police custody when they gave consent. *Id*. at 704-05.

Taking these factors into account, "[t]he ultimate question is whether, under the totality of the circumstances, the consent appeared voluntary to a reasonable officer." *United States v. Gutierrez*, 221 F. App'x 446, 449 (7th Cir. 2007). Here, five of the six factors weigh in favor of voluntary consent: both Defendants proved to be intelligent adults; the defendants were not detained very long before giving consent; consent was given immediately and multiple requests

were not necessary; there is no evidence of physical coercion; and Defendants were not in police custody when they gave consent.  It is undisputed that Defendants were not advised of their constitutional rights prior to giving consent.  However, "[t]he 'failure to inform a suspect of his right to refuse to consent to a search does not invalidate a consent that is voluntary.'"  *United States v. Navarro*, 90 F.3d 1245, 1257 (7th Cir. 1996) (quoting *United States v. Baker*, 78 F.3d 1241, 1245 (7th Cir. 1996)).

Here, there is no evidence to suggest the consent would appear anything other than voluntary to a reasonable officer.  It was clear that the defendants speak and understand some English and they coherently responded to some questions either verbally or through gestures.  For instance, when the officer said, "revisar" while pointing at his eyes then pointing at the vehicle, Fonseco responded, "yes" and gestured towards the vehicle with an open hand.  Viewing this conduct in context strongly suggests that, although a language barrier existed, the parties indeed understood each other and that the consent to search the vehicle would have appeared voluntary to a reasonable officer.   Further, during their recorded interrogations, both Defendants admitted that Officer Pirtle asked for permission to search the vehicle and that they knew they were giving consent to have the vehicle searched.

For the foregoing reasons, the Court finds by a preponderance of the evidence that Defendants gave knowing and voluntary consent to Officer Pirtle to search their vehicle and persons at the scene.  Accordingly, Defendants' Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  November 16, 2016**

                 **s/ Staci M. Yandle**
                 **STACI M. YANDLE**
                 **United States District Judge**